# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN LIGHT, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 22-611-CJB |
| THE HONORABLE COLLEEN C. DAVIS, State Treasurer of the State of Delaware, and BRENDA MAYRACK, ESQ., State Escheator and Director, Office of Unclaimed Property, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

---

James G. McMillan, III, William E. Green, Jr., HALLORAN FARKAS + KITTILA LLP, Wilmington, DE; Mark C. Rifkin, Benjamin Y. Kaufman, FREEMAN & HERZ LLP, New York, NY; Arthur Susman, LAW OFFICE OF ARTHUR SUSMAN, Chicago, IL, Attorneys for Plaintiff.

Arthur G. Connolly, Max B. Walton, Christina M. Thompson, Lisa R. Hatfield, CONNOLLY GALLAGHER LLP, Wilmington, DE, Attorneys for Defendants.

---

### <u>MEMORANDUM OPINION</u>

Dated:  September 27, 2023
Wilmington, Delaware

*Christopher J. Burke*

**BURKE, United States Magistrate Judge**

This case arises from a challenge to the constitutionality of Section 1154(a) of Delaware's Abandoned and Unclaimed Property Law, Del. Code Ann. tit. 12, § 1130 *et seq.* ("DUPL").  John Light ("Plaintiff" or "Light"), a Delaware citizen and purported owner of unclaimed property, alleges that Section 1154(a), which precludes owners of unclaimed property from receiving interest earned on the property while it is in Delaware's possession, violates the Fifth and Fourteenth Amendments to the United States Constitution ("Constitution"), as well as Article I, Section 8 of the Constitution of the State of Delaware ("Delaware Constitution").  (D.I. 1 at ¶¶ 65, 70)  Before the Court is a motion filed by the Honorable Colleen C. Davis, Delaware's State Treasurer ("State Treasurer"), and Brenda Mayrack, Esq., Delaware's State Escheator and the Director of the Office of Unclaimed Property ("State Escheator" and together with the State Treasurer, "Defendants"), by which Defendants seek to dismiss the operative Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion").  (D.I. 16)  For the reasons that follow, the Court GRANTS Defendants' Motion.

I.      **BACKGROUND**

   A.      **Procedural Background**

On May 6, 2022, Plaintiff, individually and on behalf of an alleged class of others similarly situated, filed his Complaint against Defendants, in their official capacities for the state of Delaware ("State").  (D.I. 1)  There are two Counts in the Complaint.  In Count I, Plaintiff brings a claim for declaratory and prospective injunctive relief on behalf of a class,[1] alleging that the DUPL is unconstitutional pursuant to the Fifth and Fourteenth Amendments to the

---

[1]      The class is said to be all persons or entities who are owners of unclaimed property currently held in custody by the State Escheator or who recovered unclaimed property pursuant to the DUPL from the State Escheator at any time since May 1, 2016.  (D.I. 1 at ¶ 55)

Constitution.  (*Id.* at ¶¶ 64-68)  And in Count II, Plaintiff brings a claim for declaratory and injunctive relief on behalf of the class, alleging that the DUPL is unconstitutional pursuant to Article I, Section 8 of the Delaware Constitution.  (*Id.* at ¶¶ 69-73)  On June 29, 2022, the parties consented to have the Court conduct all proceedings in the case, including trial, the entry of final judgment and all post-trial proceedings.  (D.I. 15)

The Motion was filed on June 30, 2022, and briefing on the Motion was completed on August 3, 2022.  (D.I. 26)  The Court heard oral argument on the Motion on April 13, 2023. (D.I. 36 (hereinafter "Tr."))

**B.    Factual Background**

Below, the Court will discuss certain facts relevant to the Motion.  It will begin with a discussion of the relevant mechanics of the DUPL, and will then go on to address the specific facts at play in this case.

**1.    The DUPL**

Pursuant to the DUPL, property is considered abandoned if it is unclaimed by the "owner"[2] for the period of time specified in the law for each type of property.  For instance, unused gift cards, other refunds or credit balances are deemed abandoned after a non-use period of five years.  Del. Code Ann. tit. 12, § 1133(12) & (14).  When property having certain specified connections to Delaware is presumed abandoned, the DUPL requires "holders"[3] of that property to annually report the property to the State Escheator and to remit the property to the

---

[2]    An "[o]wner" of property is defined as "a person, or the person's legal representative when acting on behalf of the person, that has a legal, beneficial, or equitable interest in property subject to this chapter."  Del. Code Ann. tit. 12, § 1130(17).

[3]    A "[h]older" of property is defined as "any person having possession, custody, or control of the property of another person[.]"  Del. Code Ann. tit. 12, § 1130(10).

custody of the State Escheator if certain statutory conditions are met. *Id*. §§ 1140, 1142 & 1152. Once the property is reported and turned over to the State, the State Escheator deposits it into the State's General Fund. *Id*. § 1163. While the abandoned property is in the State's General Fund, the State may use it for public purposes, including by investing the property, earning interest on the property, and otherwise using the property to fund the State's operations and programs. *Id*.; *see also* (D.I. 1 at ¶¶ 40, 53).

The DUPL also provides a process by which individuals may attempt to reclaim their abandoned property. Specifically, the law provides that "[a]ny person claiming an interest in any property paid or delivered to the State Escheator under this chapter may file a claim with the State Escheator for the property[.]" Del. Code. Ann. tit. 12, § 1165(a). To alert potential owners of the fact that the State may be in possession of their abandoned property, the State must maintain a "regularly update[d] . . . internet-based searchable database" that includes the names of all persons appearing to be entitled to unclaimed property, and it must publish a notice in a daily newspaper each June and December stating that the State holds certain unclaimed property that is available to be claimed. *Id*. § 1150(d), (f) & (g).

To file a claim, an alleged owner must search for their name in the State's search engine (the "State Online Record"), select abandoned property that they believe they may be the rightful owner of, provide contact information to the State, and then electronically submit a claim to the office of the State Escheator. *See Claim Unclaimed Property*, Del. Unclaimed Prop., https://unclaimedproperty.delaware.gov/app/claim-search (last visited Sept. 21, 2023) (referenced in D.I. 1 at ¶ 51). Once a claim is submitted, the State Escheator is tasked with determining whether the claimant is entitled to the property; she does so by assessing whether the claimant has provided "evidence sufficient to establish to the reasonable satisfaction of the

4

State Escheator that the claimant is the owner of the property." Del. Code Ann. tit. 12, § 1166(a). To that end, the State Escheator provides the claimant with a list of documentation that the State Escheator requires in order to confirm the identity and ownership interest of the claimant and to otherwise complete the claim. (D.I. 17 at 3) If the State Escheator receives sufficient evidence to establish to her reasonable satisfaction that the claimant is the owner of the property, the State Escheator "shall pay or deliver [the] property to a claimant[.]" Del. Code Ann. tit. 12, § 1166(a). This payment does not include any interest accrued on the abandoned property while it was in the possession of the State. Indeed, on that front, the DUPL specifically states that "no person entitled to or owner of property shall be entitled to receive interest on account of such property from and after the date a report of such property is made to the State Escheator under this chapter whether or not the person was entitled to interest on such property prior to such date." *Id*. § 1154(a).

The State Escheator has "full and complete authority to determine all claims under" the DUPL, and is required to "immediately send written notice of [such] determination to the claimant[.]" *Id*. § 1167(a). The claimant may apply for a hearing and determination of the claim by the Tax Appeal Board within 120 days of the sending of this notice. *Id*. The decision of the Tax Appeal Board may be appealed to the Delaware Court of Chancery by either the claimant or the State Escheator. *Id*. § 1167(b).

### 2.    The Allegations

Plaintiff is a citizen and resident of New Castle County, Delaware. (D.I. 1 at ¶ 11) He alleges that the State Online Record reflects that the State Escheator "holds [his] property in custody" and that this property is "'presumed abandoned'" under the DUPL. (*Id.* at ¶¶ 11, 51

(citation omitted))[4]  Light identifies his alleged property as "a claim of over $50.00 reported by Office Depot Inc." (hereafter, the "Unclaimed Property") that has been delivered to the State Escheator pursuant to the DUPL, converted into cash and then held in the State Escheator's custody since that time.  (*Id.* at ¶¶ 51-53 (noting that while the State Escheator "has held Plaintiff's property in custody . . . the State Escheator has converted the property into cash and has used the property for public purposes, including by investing the property and earning interest, and otherwise using it to fund the State's operations and programs"))

It is undisputed that Plaintiff has not yet made a claim for this Unclaimed Property.  (D.I. 1 at ¶ 54 ("*[S]hould* Plaintiff claim his property. . .") (emphasis added); D.I. 17 at 5)  More specifically, Plaintiff has not yet electronically submitted a claim to the State Escheator and has not provided any evidence to the State Escheator that would enable her to confirm to her reasonable satisfaction that Plaintiff is the rightful owner.  (D.I. 1 at ¶ 54; D.I. 17 at 5)

## II.   DISCUSSION

With their Motion, Defendants made numerous arguments as to why Plaintiff's Complaint should be dismissed.  These included arguments that:  (1) claims against the State Treasurer should be dismissed on the ground that she does not administer or have any decision-making authority with regard to the DUPL, (*see* D.I. 17 at 6); (2) claims against Defendants should be dismissed pursuant to Rule 12(b)(1) for failure to demonstrate standing, (*id.* at 7-9); (3) claims against Defendants should be dismissed pursuant to Rule 12(b)(1) for failure to demonstrate ripeness, (*id.* at 9-11); (4) claims against Defendants should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim, (*id.* at 12-18); and (5) the class action claims should

---

[4]      In his Complaint, Plaintiff refers to property subject to the Act as "abandoned property" and "unclaimed property" interchangeably; the Court will also do so herein.  (D.I. 1 at ¶ 19)

be dismissed because a class cannot continue if the named plaintiff lacks a viable case, (*id.* at 18-19).  The Court, however, need only address Defendants' arguments as to dismissal for lack of ripeness[5] and for failure to state a claim.  For the reasons set out below, the Court will grant the Motion on both of those grounds.

---

[5]     Although Defendants brought their Motion pursuant to Rule 12(b)(1) on both standing and ripeness grounds (i.e., two doctrines that originate from the same Article III requirement that a case or controversy must exist between the parties), during argument on the Motion, the parties seemed to agree that the Court should assess subject matter jurisdiction here via a ripeness analysis.  (Tr. at 22-23, 39-40; *see also id*. at 69-71)  Precedent from the United States Court of Appeals for the Third Circuit indicates that in a situation like this one, where a plaintiff brings a pre-enforcement action, "the justiciability issue . . . can equally be described in terms of" ripeness or standing.  *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007)); *see also Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 825 F.3d 149, 167 n.15 (3d Cir. 2016) ("[W]hether Plaintiffs have standing or their claims are ripe . . . both turn on whether the threat of future harm . . . is sufficiently immediate to constitute a cognizable injury.").  "It is sometimes argued that standing is about *who* can sue while ripeness is about *when* they can sue, though it is of course true that if no injury has occurred, the plaintiff can be told either that *she* cannot sue, or that she cannot sue *yet*."  *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994) (internal quotation marks and citation omitted) (emphasis in original).  Here, the Court agrees with the parties that it makes best sense to assess the Rule 12(b)(1) issue by examining whether Plaintiff's claims are ripe.  As will be seen herein, that is really the gravamen of Defendants' Rule 12(b)(1) challenge—i.e., that Plaintiff brought his claims too early, and that he should only have pressed those claims after he completed the process of making a viable claim to the Unclaimed Property at issue.  For this reason, the Court will focus its Rule 12(b)(1) analysis on the question of ripeness.

        In any event, because the Court will below conclude that Plaintiff did not sufficiently demonstrate ripeness, the Court need not address Defendants' additional argument as to standing.  *See Persico v. Sebelius*, 919 F. Supp. 2d 622, 647 (W.D. Pa. 2013) ("Defendants have made the alternative argument that this Court lacks subject matter jurisdiction over the pending case based upon the Plaintiffs' alleged lack of standing.  Because our conclusion as to lack of ripeness is dispositive, we need not consider this alternative basis for dismissal."); *see also Col. Christian Univ. v. Sebelius*, Civil Action No. 11-cv-3350-CMA-BNB, 2013 WL 93188, at *9 (D. Colo. Jan. 7, 2013) (declining to address the defendants' standing argument where the case was not ripe for review); *Catholic Diocese of Biloxi, Inc. v. Sebelius*, Civil No. 1:12CV158-HSO-RHW, 2012 WL 6831407, at *6 (S.D. Miss. Dec. 20, 2012) (same).

A.      Should Plaintiff's Claims be Dismissed for Lack of Ripeness?

In assessing ripeness, the Court will begin by setting out the relevant legal standard.  It will then turn to the merits of the parties' arguments.

1.      Legal Standard

A court must grant a motion to dismiss pursuant to Rule 12(b)(1) if it lacks subject matter jurisdiction to hear a claim.  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  Pursuant to Article III of the Constitution, in order for a court to have subject matter jurisdiction over a dispute, the matter brought before the court must present a ripe case or controversy.  U.S. Const., art. III, § 2; *Warren v. New Castle Cty.*, Civ. No. 07-725-SLR-LPS, 2008 WL 2566947, at *12 (D. Del. June 26, 2008) ("Ripeness . . . goes to the very heart of whether a court has subject matter jurisdiction.") (internal quotation marks and citation omitted).  "The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief."  *Angelo v. NVR, Inc.*, Civil Action No. 18-523-RGA, 2021 WL 723255, at *2 (D. Del. Feb. 24, 2021) (internal quotation marks and citations omitted).

The purpose of the ripeness doctrine "is to prevent the courts . . . from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).  "At its core, ripeness works 'to determine whether a party has brought an action prematurely . . . and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'"  *Plains All Am. Pipeline*

*L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017) (citation omitted).  Concerns addressed by the doctrine include whether the parties are in a "sufficiently adversarial posture[,]" whether the facts of the case are "sufficiently developed[,]" and whether a party is "genuinely aggrieved[.]" *Id.* (internal quotation marks and citation omitted).

The Supreme Court of the United States has identified two principal considerations for determining ripeness, including:  (1) "'the fitness of the issues for judicial decision'" and (2) "'the hardship to the parties of withholding court consideration.'"  *Id.* (quoting *Abbott Lab'ys*, 387 U.S. at 149).  To assess ripeness in cases requesting declaratory and injunctive relief, the United States Court of Appeals for the Third Circuit has applied a "somewhat refined test" for ripeness, drawn from its decision in *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643 (3d Cir. 1990) ("the *Step-Saver* framework").  Pursuant to the *Step-Saver* framework, a court assesses:  "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment."[6]  *Plains*, 866 F.3d at 539-40 (internal quotation marks and citations omitted).  Such a case must satisfy all three factors to be considered ripe for adjudication.  *Id.* at 545 (concluding that a particular claim was ripe "[s]ince all three *Step-Saver* elements are present"); *Univar Sols., Inc. v. Geisenberger*, C.A. No. 18-1909 (MN), 2022 WL 2064990, at *6 (D. Del. June 8, 2022) (declining to address the remaining two factors in the *Step-Saver* framework, after determining that the plaintiff failed to establish the adversity of the parties' interests); (*see also* D.I. 17 at 9; Tr. at 26, 60).  Importantly, the burden of establishing that the plaintiff's claim is ripe is on the plaintiff.  *Univar, Inc. v. Geisenberger*, 409 F. Supp. 3d 273, 279 (D. Del. 2019).

---

[6]    The parties agree that the Court should apply the *Step-Saver* framework here.  (Tr. at 26, 60)

### 2.    Discussion

In addressing the *Step-Saver* framework, Defendants assert that Plaintiff has not

adequately demonstrated the adversity of the parties' interest (i.e., factor one) and conclusiveness

(i.e., factor two).  (Tr. at 26-27)  For the reasons discussed below, the Court concludes that

Plaintiff has failed to establish an adversity of interest, which is dispositive here.[7]

In the context of a pre-enforcement challenge, for parties' interests to be adverse, then

"harm will result if the declaratory judgment is not entered."  *Plains*, 866 F.3d at 541 (internal

quotation marks and citation omitted).  To that end, there must be a "substantial threat of real

harm" and the threat must "remain real and immediate throughout the course of the litigation."

*Id.* (internal quotation marks and citation omitted).  However, when "the plaintiff's action is

based on a contingency, it is unlikely that the parties' interests will be sufficiently adverse to

give rise to a case or controversy within the meaning of Article III."  *Id.* (internal quotation

marks and citation omitted).

Here, we know what Plaintiff's claim is about.  Plaintiff is asserting that he is the true

owner of the Unclaimed Property.  (D.I. 1 at ¶ 51)  And he asserts that in light of Section 1154(a)

of the DUPL, his constitutional rights will be violated in the future if and when he makes a claim

on that property—in that the State will thereafter fail to provide him with any interest that

accrued on the property, or other "just compensation" for the State's use of the property,[8] during

---

[7]     As a result, the Court need not address Defendants' arguments as to
conclusiveness.

[8]     During the hearing, Plaintiff's counsel repeatedly stated that Plaintiff's claim is
"not for interest . . . [t]he claim here is for just compensation, and it's sometimes useful to think
of interest as a proxy for just compensation, but it's not."  (Tr. at 44)  Counsel also stated that
"what makes the taking unconstitutional" is "not that we don't get interest[; i]t's that we get
nothing[.]"  (*Id.* at 45)  It is true that in his Complaint, Plaintiff seeks "just compensation" from
the State for the use of his Unclaimed Property.  (D.I. 1 at ¶¶ 54, 65, 70 & p. 14)  But it seems

the time it was in the State's possession.  (*Id*. at ¶¶ 54, 65, 70; *see also* D.I. 24 at 12 (Plaintiff

asserting that "when [he] recovers his unclaimed property, he *will not* receive just compensation

for the time it was in the State's possession") (emphasis in original))

But from a ripeness perspective, has Plaintiff established a "substantial threat" that this

harm will actually befall him?  Or, in contrast, does the record show that Plaintiff's action here is

"based on a contingency"?  In the Court's view, these ripeness questions do not go Plaintiff's

way.

In explaining why, the Court must first address a threshold matter regarding the type of

ripeness challenge Defendants are making here.  A motion to dismiss for want of ripeness

pursuant to Rule 12(b)(1) may be brought as a "facial" attack or a "factual" attack.  *See Borough*

*of McKees Rocks v. Allegheny Cty. Sanitary Auth.*, 2:21-cv-530-NR, 2022 WL 1443749, at *3

(W.D. Pa. May 6, 2022); *Resnik v. Woertz*, 774 F. Supp. 2d 614, 627 (D. Del. 2011); *see also*

*Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014) (assessing facial and factual

challenges as to a Rule 12(b)(1) standing issue).  A "facial" attack "contests the sufficiency of

the pleadings . . . whereas a factual attack concerns the actual failure of a plaintiff's claims to

comport factually with the jurisdictional prerequisites."  *Const. Party of Pa.*, 757 F.3d at 358

(internal quotation marks, citations and brackets omitted).  "Where the movant presents a facial

challenge, the court must accept all factual allegations in the complaint as true and may only

---

strange for Plaintiff to suggest that his claim is "not for interest."  That is because:  (1) it is the
expected future decision of the State not to pay interest on the use of the Unclaimed Property that
drove Plaintiff to file his claims; and (2) interest owed on the use of the property seems to be at
least one possible form of "just compensation" that Plaintiff seeks.  Indeed, Plaintiff has
repeatedly indicated the same in his Complaint and in his briefing on the Motion.  (*Id*. at ¶¶ 8,
10, 29, 37-38, 40, 44-45, 47-48, 59; *see also* D.I. 24 at 1-4, 6-9, 11, 13-14)  In any event,
Plaintiff's counsel confirmed that whether interest or some other form of just compensation is
sought here has no impact on the ripeness issue at play in the case.  (Tr. at 46)

consider the complaint and documents referenced therein or attached thereto." *Resnik*, 774 F. Supp. 2d at 627. "Where the movant presents a factual challenge, however, the court need not confine its consideration to the allegations of the complaint nor accept those allegations as true." *Id*. It is important to assess whether a challenge is facial or factual, as that determines how the pleading must be reviewed. *Const. Party of Pa.*, 757 F.3d at 357.

Here, this "facial or factual" challenge issue is a bit tricky. (Tr. at 20 (Defendants' counsel noting that the question arises in a "unique" context here)) As was noted above, in his Complaint, Plaintiff alleges that he is the actual owner of the Unclaimed Property. (D.I. 1 at ¶ 51) Moreover, if one goes to the State Online Record (which is referenced in the Complaint), (*id*.), one can see that there is indeed an amount of over $50 relating to Office Depot, Inc. for which the owner's name is reported to be John Light; the record also notes that this person is from Wilmington, Delaware. *See Claim Unclaimed Property*, Del. Unclaimed Prop., https://unclaimedproperty.delaware.gov/app/claim-search (last visited Sept. 21, 2023). Now, in their briefing, Defendants did not necessarily *agree* that Plaintiff is the same John Light who is the owner of the Unclaimed Property at issue. (D.I. 26 at 4 ("[T]his John Light is certainly not the only person in the world with the same name.")) However, Defendants did not present any competing facts (e.g., via affidavit or otherwise) in an attempt to try to establish that Plaintiff is *not* actually the owner of the Unclaimed Property. Because Defendants did not present any competing evidence on this score nor as to any other relevant allegation, in the Court's view, Defendants' ripeness challenge has to be considered a facial challenge. *See, e.g., Const. Party of Pa.*, 757 F.3d at 358 (considering a Rule 12(b)(1) challenge to be a facial attack, since the movant "filed the attack before it filed any answer to the Complaint or *otherwise presented competing facts*") (emphasis added); *Resnik*, 774 F. Supp. 2d at 627 (same); *see also NE Hub*

*Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 n.7 (3d Cir. 2001) (stating that a facial challenge arises when a defendant challenges "a complaint for failure to allege subject matter jurisdiction[,]" while a factual challenge "contend[s] that the court in fact lacks subject matter jurisdiction, no matter what the complaint alleges").  And since that is so, the Court must accept Plaintiff's factual allegations—including that he is the owner of the Unclaimed Property—to be true.  (D.I. 24 at 13; Tr. at 24-25)

But that does not end the ripeness inquiry.  The Complaint does not allege that Plaintiff has actually submitted a claim for the Unclaimed Property to the office of the State Escheator.  Indeed, it is undisputed that Plaintiff has not done so.  Thus, it is also undisputed that Plaintiff has not attempted to present any documentation to the State Escheator that would amount to "*evidence* sufficient to establish *to the reasonable satisfaction of the State Escheator* [that Plaintiff] is the owner of the property."  Del. Code Ann. tit. 12, § 1166(a) (emphasis added).  And, relatedly, it is undisputed that the State Escheator has made no determination about whether Plaintiff is, in fact, the same person who is listed in the State Online Record as the property owner.

This matters with regard to the ripeness question at issue.  That is because Defendants are asserting that, even if Plaintiff's challenge is a facial challenge, there are still important contingencies at play relating to Plaintiff's claims—particularly regarding whether Plaintiff will attempt to and will be able to make a *sufficient evidentiary showing* to demonstrate that he is a viable claimant.  (Tr. at 42-43, 57, 59)  In other words, even if one assumes (as the Court will here) that Plaintiff is the actual owner of the Unclaimed Property, the following relevant questions are still left unanswered on this record:  Will Plaintiff actually make a claim on that property?  And if he does, will he be able to sufficiently demonstrate his ownership rights?  After

all, being the owner of a piece of property is a different thing from mustering relevant evidence demonstrating that this is so. And pursuant to the DUPL, it is not as if a person need only make the bare, *pro forma* statement that they own the abandoned property at issue in order to claim it. To the contrary, as noted above, a successful claimant must present sufficient "evidence" in that regard. Del. Code Ann. tit. 12, § 1166(a). Whether Plaintiff could meet that bar is uncertain.

To make things more concrete here, assume that what is at issue is an Office Depot gift card that was worth more than $50, and that is affiliated with a "John Light" from Wilmington, Delaware. Does Plaintiff have any evidence that would help to show that he is the person who once owned or once was entitled to this gift card (such as some record of purchase from Office Depot)? It is not clear from the record, one way or the other, that he does. If he does not, would Plaintiff simply attempt to prove ownership by submitting an identification document (such as a driver's license) showing that his name is John Light and that he lives somewhere in New Castle County, Delaware,[9] in the hopes that this would be sufficient? If so, does Plaintiff have such identification? If he does, would presentation of that type of identification be enough to meet the statute's evidentiary bar? Or, would Plaintiff's name be deemed sufficiently common such that the State Escheator would demand more evidence in order for Plaintiff to meet his burden (so as to confirm, for example, that Plaintiff is not attempting to claim property that belongs to a family member or some other person with the same name)? (*See* Tr. at 77) If so, could Plaintiff have provided such evidence? Since Plaintiff has never attempted to actually make a claim for the

---

[9]     The Court notes that the Complaint states only that Mr. Light lives in New Castle County, Delaware. (D.I. 1 at ¶ 11) The State Online Record says that the Unclaimed Property at issue belongs to a John Light from Wilmington, Delaware. Wilmington is one of many cities and towns located in New Castle County. Does Mr. Light actually live in Wilmington? Would he be able to prove that to the satisfaction of the State Escheator? These questions too are unanswered on this record.

Unclaimed Property at issue, we do not know the answer to any of these questions. (D.I. 17 at

11 (Defendants arguing that "Light is not in a position adverse to the State because Light has not

filed a claim with the State . . . [and because] there can be no controversy where Light failed to

substantiate an ownership interest and failed to afford the State the opportunity to review his

claim in the first instance"); *see also* D.I. 26 at 3-4 (same))[10]

---

[10]     Surprisingly (and somewhat perplexingly), neither side submitted any record evidence regarding the process by which the State Escheator makes determinations of ownership pursuant to the DUPL. At oral argument, counsel for both sides made many different assertions about what this process entails—assertions amounting to attorney argument that the Court cannot rely on here. For example, Defendants' counsel said that: (1) the State Escheator is "not going to take [a claimant's] word" that they are the true owner of a piece of unclaimed property; (2) depending on the facts, sometimes all a claimant must do to meet the evidentiary bar is to "provid[e] a driver's license[,]" but in other cases, the State requires that additional documentation be provided, such as address information, or court documents, or information associated with the property at issue; and (3) the State Escheator denies approximately 10% of the claims for unclaimed property that are made each year. (Tr. at 9-10, 13-14, 75-76) Plaintiff's counsel, for their part, asserted that the State Escheator's role in the determination process simply amounts to a "ministerial function" or a "check-the-boxes"-type event, one allowing the State Escheator no real "discretion" to deny claims like Plaintiff's for want of evidence. (*Id*. at 64-66)

The key point here, however, is that we do not have any record evidence to help the Court determine whether any of these bald assertions are correct. And, as Plaintiff's counsel acknowledged at the hearing, one key reason *why* the Court does not "know what documentation the State requires [is] because [Plaintiff] ha[s not] gone through the process [to submit a claim]." (*Id*. at 66) Exactly. It was Plaintiff's burden to demonstrate ripeness. If Plaintiff believed that the claims determination process worked in a manner leaving no doubt that his claim (had it been submitted) would have been rubber-stamped and approved, then Plaintiff could have alleged facts to that effect in his Complaint (as to a facial challenge to jurisdiction). Or he could have provided the Court with such evidence, via sworn affidavits or declarations, demonstrating that this is so (as to a factual challenge to jurisdiction). He did none of this. Instead, all we know about the determination process is what the statute tells us: that "evidence" must be submitted by a claimant, and that this evidence must be of a type that can substantiate, to the "reasonable satisfaction of the State Escheator[,] that the claimant is the owner of the property." And that no such evidence was submitted to the State here.

In sum, the lack of real world evidence regarding what the DUPL claims process looks like is a reason why Plaintiff has not met his burden as to ripeness.

Plaintiff argues to the contrary that the case is ripe because "*when* Plaintiff recovers . . . *his* property, it is certain he will not [obtain] interest or other just compensation[.]"  (D.I. 24 at 14 (emphasis added))  But this statement itself demonstrates the eminently contingent nature of Plaintiff's claims.  It is not clear that there will ever be a "when"—that is, that Plaintiff will in fact ever make a claim on this property.[11]  And if he does, it is uncertain whether he will be able to show that it is in fact "his" property—i.e., by sufficiently demonstrating ownership.  In the absence of those contingent events occurring, Plaintiff will never suffer the constitutional harms that he complains of in this case.  In light of these contingencies, the parties' interests are not sufficiently adverse so as to give rise to an Article III case and controversy.

The Third Circuit's decision in *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534 (3d Cir. 2017) is instructive and supports the Court's conclusion here.  (*See also* D.I. 26 at 6)  In *Plains*, the DUPL (referred to as the "Escheats Law" in the opinion) was also at issue.  866 F.3d at 537.  In dispute was a portion of the law that permitted the State Escheator—in order to ensure that holders were complying with the law's requirements—to examine a holder's records; the DUPL also stated that the State Escheator could contract with private third parties to perform this audit on the State's behalf.  *Id*. (citing Del. Code Ann. tit. 12, §§ 1171 & 1176(a))  The DUPL stated that if the holder did not retain the required records, then the State Escheator could "'determine the amount of property due using a reasonable method of estimation [hereafter, "estimation" or "the estimation process"].'"  *Id*. (citing Del. Code Ann. tit. 12, § 1176(a)).  After

---

[11]      Indeed, in his Complaint, Plaintiff appeared to be cagey about whether he actually intended to make a future claim.  In that regard, the Complaint asserts that "[u]nder [Section] 1154 . . . *should* Plaintiff claim his property, the State Escheator will pay Plaintiff a cash payment equal to the total sum of the principal amount of the unclaimed property but will not pay any just compensation to Plaintiff for the State's use of that property during the period of custody."  (D.I. 1 at ¶ 54 (emphasis added))

such an audit, if the State Escheator determined that a holder had unclaimed property due and

owing, she could then assess liability (i.e., a request for payment, plus interest and penalties),

subject to a review of that decision by the Delaware Court of Chancery.  *Id*. (citing Del. Code

Ann. tit. 12, §§ 1179(b) & 1183).

In *Plains*, a Delaware official sent the plaintiff a notice indicating that the State intended

to audit its records over nearly a 20-year period, so as to evaluate the plaintiff's compliance with

the law.  *Id*.  The State hired an auditing firm, which sent document requests to the plaintiff; the

plaintiff responded by saying it would not produce the documents, and by raising several

constitutional objections to the audit.  *Id*.  The plaintiff thereafter sued a number of relevant

parties (including the State Escheator) in federal court, arguing that the proposed audit, *inter*

*alia*, violated various aspects of the Constitution, seeking an injunction as to the audit, and

seeking attorney's fees.  *Id*. at 538.  The District Court dismissed the case, finding that all of

plaintiff's claims were unripe (except for an equal protection claim that was dismissed on

another ground).  *Id*.

On appeal, the Third Circuit agreed with the District Court that the plaintiff's facial

claims were not ripe.  In assessing the adversity of interest factor, the *Plains* Court began by

noting that, where threatened action by the government is concerned, a party seeking review

need not always have suffered a completed harm in order to establish adversity.  *Id*. at 541.  But

the Court nevertheless determined that the plaintiff had not sufficiently satisfied the adversity of

interest element.  In first addressing the plaintiff's challenge to the estimation process, the Court

noted that the process "merely requires [the plaintiff] to sit back and wait while Delaware

calculates its liability" and that "estimation is not a burdensome process 'where the impact of the

administrative action could be said to be felt immediately by those subject to it in conducting

17

their day-to-day affairs.'" *Id.* (quoting *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164 (1967)). The *Plains* Court also explained that while "one possible result of the estimation process—an arbitrary penalty—could harm [the plaintiff], that harm would only result after Delaware (1) concluded that [the plaintiff's] records were inadequate, (2) used estimation, (3) found past-due abandoned property, and (4) erroneously calculated what was owed to the State. As such, the only alleged harm [the plaintiff] could suffer from estimation is based on contingencies[,] and its [constitutional] claims lack both sufficient adversity for ripeness and a cognizable Article III injury." *Id.* Additionally, the *Plains* Court addressed the plaintiff's challenges relating to the State's ability to have an auditor conduct an audit of the plaintiff's business (without using estimation). It noted that while such audits could be "quite burdensome[,]" the plaintiff's claims in this regard were also not ripe, in part because the "audit has not yet begun[,] so it is wholly speculative whether [it] will be particularly burdensome and costly and result in an enforcement action"—such that the "extent of the burden is thus 'conjectural or hypothetical.'" *Id.* at 542 (citation omitted).

*Plains*' analysis is helpful in assessing the adversity of interest element here. Just as in *Plains*, here the DUPL does not require Plaintiff to go through a "burdensome process" in order to make a claim on the property at issue, or in order to try to demonstrate to the State Escheator's satisfaction that he is the property owner. Instead, all that is required is the submission of an electronic form and the provision of some amount of documentation to the State in support of the claim.[12] (D.I. 26 at 6) Moreover, as in *Plains*, here any harm to Plaintiff would only come after

---

[12]    Plaintiff does not (and cannot) seriously dispute that this burden is minimal. Indeed, Plaintiff's counsel conceded as much at the hearing. (Tr. at 62-63 (counsel agreeing that the DUPL does not place a "great burden" on any claimant, as the claims process is "certainly not time consuming and it certainly doesn't require a tremendous amount of effort"); *see also id.* at 43) This admission thus begged the question: Why *hadn't* Plaintiff made a claim yet? When

multiple contingencies were first satisfied—including that Plaintiff would actually make a claim

to the property, that he would thereafter submit evidence regarding ownership, and the State

Escheator would then make a determination that this submitted evidence was sufficient.  (*Id.*)  As

in *Plains*, then, it is "wholly speculative" whether a future administrative process will result in

Plaintiff being deprived of interest or just compensation on the Unclaimed Property at issue.  *See*

*also Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647-48 (3d Cir. 1990) (concluding

that the plaintiff's claims were not ripe, in part due to the lack of adversity of interest between it

and defendants, where the plaintiff was asking the court to find the defendants liable only "if"

another event occurred—i.e., that in separate lawsuits, the plaintiff's customers would be able to

establish the presence of certain defects in the plaintiff's product) (internal quotation marks and

citations omitted); *see also Marathon Petroleum Corp. v. Sec'y of Fin. of Del.*, 876 F.3d 481,

497 (3d Cir. 2017) (concluding that the plaintiffs' challenge as to the scope of the State's audit

---

asked this question at the hearing, Plaintiff's counsel responded that Plaintiff had not done so
because "we do[ not] know what the consequence is of doing that."  (Tr. at 44)  Specifically,
Plaintiff's counsel explained that Plaintiff was not sure whether "you are required to or asked to
or simply are deemed to waive any claim to just compensation when you click that button that
says 'File claim.'"  (*Id.* at 47-49)

　　As an initial matter, Plaintiff never raised in his briefing the argument that he had failed
to make a claim because of the potential waiver-related consequences of doing so.  (*Id.* at 63)
Any new argument to that effect made during the hearing has itself been waived.  *See Int'l Bus.*
*Machs. Corp. v. Rakuten, Inc.*, Civil Action No. 21-461-GBW, 2022 WL 17848779, at *11 n.7
(D. Del. Dec. 22, 2022) (citing cases).  Moreover, later during the hearing, Plaintiff's counsel
seemed to undercut this argument, when counsel stated that "there[ is] no reason [for Plaintiff]
not to [make a claim for the Unclaimed Property.]"  (Tr. at 74)  And lastly, even if Plaintiff had
not waived (or otherwise disclaimed) this argument (i.e., that he avoided the claims process
because he did not want to waive the right to later argue for just compensation as to the State's
use of his Unclaimed Property), such an argument would still fail.  That is because Plaintiff has
not met his burden to show that filing a DUPL claim *would actually lead to waiver of such a*
*right*.  Plaintiff provides no evidence indicating, *inter alia*, that in order to claim property
pursuant to the DUPL, one must waive their right to challenge Section 1154(a) in court.  (*Id.* at
47-49)  Indeed, at the hearing, Defendants suggested that this is simply not the case.  (*Id.* at 76)

pursuant to the DUPL was not ripe due to the lack of adversity of the parties, in that the State had

not yet formally demanded compliance with the audit, such that the plaintiffs were not faced with

the decision of choosing whether to submit to the audit or face penalties).[13]

_____

[13]   In support of his argument that his claims are ripe (and that it would serve no purpose for him to be required to make a claim under the DUPL for his Unclaimed Property), Plaintiff cites to the United States Court of Appeals for the Seventh Circuit's opinion in *Kolton v. Frerichs*, 869 F.3d 532 (7th Cir. 2017). The Court, however, finds Plaintiff's reliance on *Kolton*—a case that was not decided on ripeness grounds, but instead on forfeiture grounds—to be misplaced.

In *Kolton*, the plaintiff alleged that a provision of the Illinois Disposition of Unclaimed Property Act ("765 ILCS 1025/15"), which denied owners of unclaimed property interest on that property while it was in the state's possession, violated the Fifth and Fourteenth Amendments as an unconstitutional taking. 869 F.3d at 533. The District Court concluded that the plaintiff had failed to establish subject matter jurisdiction because he had failed to try to obtain interest-based compensation on his property with the state, prior to filing his claims in federal court. *Id.* The Seventh Circuit disagreed, concluding under the circumstances that the plaintiff need not first present a claim for return of his property with the State pursuant to 765 ILCS 1025/15 in order to have a justiciable case or controversy. *Id.* at 534.

But in *Kolton*, the key issue raised by the plaintiff and addressed by the Seventh Circuit was different than what is at play here. The *Kolton* Court's point was that it did not make any sense to first require the plaintiff to try to obtain interest income from the state as to his unclaimed property before filing a federal suit. This was because: (1) the text of 765 ILCS 1025/15 clearly precluded the Illinois Treasurer from turning over interest and other income that has accrued on property in state custody; and (2) a prior decision of the Illinois Supreme Court upheld the validity of 765 ILCS 1025/15's provisions permitting the state to keep any earnings on such property. *Id.* at 534-35. In light of this, the Seventh Circuit concluded that requiring the plaintiff to have first presented a claim for lost interest to the state's treasurer or to a state judge before filing suit would have been "pointless [and] perhaps sanctionably frivolous"; the failure to do so thus did not bar the claims from being ripe. *Id.* at 535.

However, in contrast to *Kolton*, here the key ripeness issue does not have to do with whether Plaintiff would have been able to convince the State to provide him interest or just compensation for the time value of his Unclaimed Property. Instead, the key issue relates to Plaintiff's failure to try to demonstrate (to the satisfaction of the State Escheator) that he was actually the owner of the Unclaimed Property—a fact not addressed in *Kolton*. (D.I. 26 at 5-6 (distinguishing *Kolton* in part because here the issue is whether "[Plaintiff] is definitively the appropriate claimant"); Tr. at 28-29, 53 (Plaintiff's counsel acknowledging this difference between the instant case and *Kolton*))

Finally, the Court believes that in addition to being legally correct, this outcome makes practical sense, in light of the role that federal courts play in resolving legal disputes. When the constitutionality of a state's unclaimed property statute is at issue, it cannot be the case that any citizen of that state—regardless of whether they have a viable claim to any actual unclaimed property—can challenge the statute's *bona fides*. Were a federal court to issue legal rulings on this question to any citizen who brings suit, it would essentially be offering up an improper advisory opinion on a purely legal issue. That is not the role of the court. *See Bell Atl. Corp. v. MFS Commc'ns Co., Inc.*, 901 F. Supp. 835, 846 (D. Del. 1995) ("[T]he simple assertion that the parties disagree on a legal issue does not create adversity of interest or a justiciable controversy[.] . . . In almost any unripe case, the parties have at minimum a difference of opinion, even diametric opposition, as to a legal issue."); *see also* (Tr. at 36-37). An outcome to the contrary cannot be what is contemplated by Article III.

So, for the reasons discussed above, the Court concludes that Plaintiff has failed to adequately establish ripeness and that this case must be dismissed as a result.

**B.      Should Plaintiff's Claims Alternatively Be Dismissed for Failure to State a Claim?**

The Court next turns to another ground Defendants raise in support of their Motion: whether Plaintiff has failed to state a claim pursuant to Rule 12(b)(6). For the reasons that follow, the Court concludes that even if Plaintiff had adequately alleged subject matter jurisdiction, he has not sufficiently stated his claim. Therefore, the Court will dismiss the claims in the Complaint in the alternative for this reason as well.

The Court again begins with the relevant legal standard, before moving on to discuss the parties' positions and arguments.

### 1.    Legal Standard

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  In assessing such a motion, the court first separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Ashcroft*, 556 U.S. at 679).

### 2.    Discussion

Pursuant to the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, "private property" shall not "be taken for public use[,] without just compensation." U.S. Const. amend. V; *see also Chi. Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 236 (1897).  Similarly, Article I, Section 8 of the Delaware Constitution states that no person's property shall "be taken or applied to public use without the consent of his or her representatives, and without compensation being made."  Del. C. Ann. Const., Art. 1, § 8.[14]  To assert a valid takings claim, a plaintiff must have "a property interest that is constitutionally protected."  *Simon v. Weissman*, 301 F. App'x 107, 110 (3d Cir. 2008).  Such interests "are not

---

[14]        The Court will herein consider the protections afforded by the Fifth Amendment and Article I, Section 8 of the Delaware Constitution to be effectively the same, as courts have noted that their scope is substantially identical.  *See, e.g., New Castle Cty. Sch. Dist. v. State*, 424 A.2d 15, 16 (Del. 1980) (noting that Delaware courts have treated the constitutional guarantees under the Fifth Amendment and Article I, Section 8 of the Delaware Constitution as "provid[ing] the same degree of protection against governmental takings of property without just compensation" such that "the federal and the State law questions are essentially one and the same").

created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Texaco, Inc. v. Short*, 454 U.S. 516, 525 (1982) (internal quotation marks and citation omitted).

The parties' arguments here all stem from the same core question:  Has Plaintiff adequately alleged a constitutionally protected property interest?  Defendants argue that Plaintiff cannot establish a cognizable claim that Section 1154(a) of the DUPL is unconstitutional, because he does not have a constitutionally protected property interest in the interest that accrues on abandoned property while it is in the State's possession.  (D.I. 17 at 13)  Plaintiff disagrees. (D.I. 24 at 15-20)

In assessing this issue, the Court begins its discussion with *Simon v. Weissman*, 301 F. App'x 107 (3d Cir. 2008), a key Third Circuit decision.  In *Simon*, the Third Circuit considered whether Pennsylvania's Disposition of Abandoned and Unclaimed Property Act (the "DAUPA"), which relieved the State from having to pay interest earned on unclaimed property, imposed a taking for which just compensation was due, pursuant to the Fifth and Fourteenth Amendments.  301 F. App'x at 108-09.  Relying on the common law principle that "interest follows the principal" in ownership, the plaintiffs argued, *inter alia*, that Pennsylvania's failure to remit interest accrued on unclaimed property while in its possession violated their constitutional rights and necessitated just compensation.  *Id.* at 111 (internal quotation marks and citations omitted).  Defendants (hereafter, "Pennsylvania") disagreed and moved for summary judgment on the basis that no such taking without just compensation had occurred.  *Id.* at 109. The United States District Court for the Eastern District of Pennsylvania awarded summary judgment to Pennsylvania on this ground.  *Id.*

23

In *Simon*, the Third Circuit began by discussing the various principles underlying the dispute, including a state's powers to take control of abandoned property.  For instance, the Third Circuit noted that a state's ability to escheat personal property under appropriate circumstances cannot be questioned.  *Id.* at 110.  "'As a broad principle of jurisprudence rather than as a result of the evolution of legal rules, it is clear that a state, subject to constitutional limitations, may use its legislative power to dispose of property within its reach, belonging to unknown persons.'"  *Id.* (quoting *Standard Oil Co. v. New Jersey*, 341 U.S. 428, 436 (1951)).  "Likewise, the common law doctrine of "*bona vacantia*" [(meaning "vacant goods")] allows states to take control and dispose of abandoned property."  *Id.*  And although courts have "long applied the common law rule of 'interest follows the principal[,]'" the Third Circuit concluded that this rule was not meant to be applied in every instance in which someone's property is held by another.  *Id.* at 110-111 (citation omitted).  Indeed, the *Simon* Court noted that at the rule's outset, its scope was quite limited, and that it was never meant to be a "static principle[.]"  *Id.* at 111.

With this as background, the Third Circuit turned to the issue before it.  The *Simon* Court noted that the matter involved "not the 'usual and general' case" regarding interest on deposited funds, but instead whether "interest generated from *abandoned* property constitutes a cognizable property right under the Fifth Amendment."  *Id.* at 112 (emphasis in original).  It explained that it was aware of no "long-standing practice of courts applying the 'interest follows the principal' rule to abandoned property.  *Id.*  As to the situation "where a property owner claims he is owed the fruit after abandoning the tree[,]" the Court concluded that Pennsylvania had no obligation to pay interest on property that the plaintiffs abandoned.  *Id.*  This is because the plaintiffs had allowed their property interest to lapse, and "[i]t is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no

24

'taking' that requires compensation." *Id.* (quoting *Texaco*, 454 U.S. at 530).[15]  The *Simon* Court

concluded that "[b]ecause [the plaintiffs] have statutorily abandoned their property and thus have

no property right in any interest generated from that property, the Commonwealth of

Pennsylvania did not effect a taking when it refused to pay interest earned on the property while

in the custody of the state." *Id.* at 114.  It noted that this is the case even where (as relevant to

certain sections of the DAUPA) the Commonwealth has not yet taken title to the abandoned

property. *Id.*[16]

---

[15]      The Supreme Court has, in a similar context, held that a person does not retain a
property interest in property that he abandons.  Specifically, in *Texaco Inc. v. Short*, 454 U.S.
516 (1982), the Supreme Court considered whether the plaintiffs held a property right in certain
mineral interests, despite the fact that a state statute provided that mineral rights reverted to the
owner of the surface property if the owner of the rights had not used their mineral interest or
otherwise made a claim on that interest in 20 years.  454 U.S. at 530.  The *Texaco* Court
ultimately held that the statute at issue did not unconstitutionally provide for the taking of private
property without just compensation.  *Id.*  This was because states may treat mineral rights that
have not been used for 20 years as being deemed abandoned, such that it is the owner's failure to
make use of the mineral rights, and not the action of the state, that causes the lapse in property
right.  *Id.*  Thus, in those circumstances, there is no unconstitutional "taking" resulting in the loss
of property ownership, and no just compensation needs to be provided to the former owner.  *Id.*

[16]      In *Simon*, the Third Circuit noted and distinguished the Supreme Court's decision
in *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998)—a case in which the Supreme
Court considered the constitutionality of the Texas Interest on Lawyers Trust Account
("IOLTA") program.  301 F. App'x at 112.  In *Phillips*, the IOLTA program at issue provided
that Texas attorneys who received client funds that could not be invested profitably on behalf of
the clients were to place those funds in a Negotiable Order of Withdrawal account.  524 U.S. at
160-61.  Any interest earned on the funds deposited in an IOLTA account was to be paid to the
Texas Equal Access to Justice Foundation.  *Id.* at 162.  The Supreme Court, applying the rule
that "interest follows principal[,]" concluded that "the interest income generated by funds held in
IOLTA accounts is the 'private property' of the owner of the principal."  *Id.* at 172.  The Court
"express[ed] no view as to whether these funds have been 'taken' by the State[ or] an opinion as
to the amount of 'just compensation,' if any, [that is] due[,]" leaving those issues to be addressed
on remand.  *Id.*

The *Simon* Court noted *Phillips*' holding, but distinguished the case on the ground that in
*Phillips*, the money at issue belonged to the clients of attorneys, such that the "rightful owner of
the property was known and identifiable, and the money was not deemed abandoned."  301 F.
App'x at 112.  In light of this, and contrary to Plaintiff's suggestion in its briefing, (D.I. 24 at 16-

After reviewing the Third Circuit's decision in *Simon*, and given the similarities between that case and the instant case, the Court does not see how it can or should deviate from *Simon*'s holding.  Here, just as in *Simon*, Plaintiff is alleging that the State effectuated a taking when it put certain abandoned property to public use without providing just compensation.  But, as in *Simon*, here the State's actions cannot rise to the level of a taking; if one assumes that Plaintiff is the true owner of the Unclaimed Property, then he was the one who allowed his alleged property interest to lapse in the first place.[17]  As a result, Plaintiff cannot have a cognizable property interest in that property—or to any income that accrues as to the property—while the property is in the State's possession.  *Texaco*, 454 U.S. at 530 (stating that the State is not required "to compensate the owner for the consequences of his own neglect").[18]  And although the Third Circuit in *Simon* was addressing a Pennsylvania state law, not the DUPL, the Court is unaware of any material differences between the two statutes that would make a difference in this context (nor did Plaintiff reference any in his briefing or at the hearing on the Motion).  (Tr. at 83)  Thus, the Court must follow *Simon* in concluding that Plaintiff does not have a cognizable property

18), nothing about what the Fifth Circuit did on remand in the *Phillips* case "calls into question the distinction attempted by the Third Circuit in *Simon*[,]" (*id*. at 18).  The distinction is still eminently applicable:  one case dealt with abandoned property (as to which a person no longer holds a property right and as to which there can be no taking by a state) and one case did not. (Tr. at 121)

[17]    There is no challenge in this case to the State's determination that the Unclaimed Property at issue was in fact abandoned.

[18]    Other courts outside of the Third Circuit have reached the same conclusion as did the *Simon* Court on this issue.  *See, e.g.*, *Turnacliff v. Westly*, 546 F.3d 1113, 1118-20 (9th Cir. 2008); *Rowlette v. State*, 656 S.E.2d 619, 625-26 (N.C. Ct. App. 2008); *Smolow v. Hafer*, 959 A.2d 298, 304 (Pa. 2008); *Hooks v. Treasurer*, 961 So. 2d 425, 432 (La. Ct. App. 2007); *Clark v. Strayhorn*, 184 S.W.3d 906, 914-15 (Tex. App. 2006); *Smyth v. Carter*, 845 N.E.2d 219, 223-24 (Ind. Ct. App. 2006).

interest in any income accruing from the Unclaimed Property while it was in the State's possession.

In his briefing, Plaintiff did not seriously dispute the relevance and applicability of *Simon* to the situation here.  Instead, Plaintiff heavily relied on out-of-Circuit authority to support his contrary position (i.e., that he *does* have a property right in the interest earned or to other just compensation owed as to the use of his Unclaimed Property)—stating that these judicial decisions are "better-reasoned" than *Simon*.  (D.I. 24 at 19)  By way of example, Plaintiff points to several opinions from the United States Court of Appeals for the Seventh Circuit suggesting that a state may not take possession of an owner's unclaimed property and retain any income earned on that property without paying just compensation to the owner.  (*Id*. at 18 (citing *Goldberg v. Frerichs*, 912 F.3d 1009, 1011 (7th Cir. 2019); *Kolton v. Frerichs*, 869 F.3d 532, 533 (7th Cir. 2017)))

But regardless of the merits of the Seventh Circuit's approach, the difficulty for Plaintiff here is that *the Third Circuit*, having considered many of the same Supreme Court decisions as did the Seventh Circuit, *has simply decided differently*.  (Tr. at 84-85)  It is the Court's duty to faithfully apply Third Circuit precedent to cases before it, like this one, where Third Circuit law controls.  *See Singleton v. Harry*, CIVIL NO: 1:13-CV-02711, 2020 WL 7366365, at *12 (M.D. Pa. Sept. 21, 2020); *Invista S.à.r.l. v. Rhodia S.A.*, Civil No. 08-941 (RBK/JS), 2009 WL 1439407, at *5 n.2 (D. Del. May 20, 2009).  The Court therefore rejects Plaintiff's argument that Seventh Circuit law is "better reasoned"; instead, it will (as it must) follow the Third Circuit's holding in *Simon*.

Having concluded that *Simon* controls, the Court will now take a moment to address an additional argument that Plaintiff raised for the first time at the Motion hearing.  There,

Plaintiff's counsel argued that *Simon* decided an issue that Plaintiff did not raise here.  (Tr. at 90-98)  More specifically, Plaintiff's counsel pointed to the part of *Simon* in which the Third Circuit defined the issue before it and stated that "[w]hat is before us here[] . . . is . . . whether interest generated from abandoned property constitutes a cognizable property right under the Fifth Amendment."  *Simon*, 301 F. App'x at 112 (emphasis omitted) (*cited in* Tr. at 90).  According to Plaintiff, while *Simon* was about "whether the state took the *interest* on cash that was held [and] whether that was a taking itself[,]" here "the taking that [Plaintiff has] alleged . . . is not the taking of *interest*[, but instead] the taking of *unclaimed property*" for which the State is "required to pay just compensation[.]"  (Tr. at 90-92 (emphasis added); *see also id.* at 93, 105-06)  This difference, according to Plaintiff, is critical to distinguishing *Simon*.

There are a number of problems with this argument.  But the most significant is that—as Plaintiff's counsel repeatedly acknowledged during the hearing—Plaintiff never actually made this argument in the relevant section of its answering brief.  (*Id.* at 98-99, 102-04)  Nowhere in Plaintiff's brief where *Simon* is discussed does Plaintiff mention this "interest vs. the unclaimed property itself" distinction that Plaintiff's counsel belatedly raised at the hearing.  (D.I. 24 at 16-20)  As the Court has already noted, *see supra* n. 12, arguments not made in briefing and raised for the first time at oral argument are deemed waived.  *See Fundamental Innovation Sys. Int'l LLC v. Lenovo (United States), Inc.*, Civil Action No. 20-551-RGA-CJB, 2022 WL 1046255, at *3 n.9 (D. Del. Apr. 7, 2022) (finding that a new argument presented at oral argument was waived, where it could have been presented in the briefing); *Horatio Washington Depot Techs. LLC v. Tolmar, Inc.*, Civil Action No. 17-1086-LPS, 2018 WL 5669168, at *7 n.4 (D. Del. Nov. 1, 2018) (same, citing cases), *report and recommendation adopted* 2019 WL 1276028 (D. Del.

Mar. 20, 2019).[19]  This requirement is not simply a formality.  Rather, it is meant to avoid the exact situation here—one where the Court and the opposing party are left blindsided by arguments raised for the first time at a hearing.  Such a rule helps ensure that judicial resources are not wasted, and that each side has a full and fair opportunity to develop the record and meaningfully respond to its opponent's arguments.  *See Tomasko v. Ira H. Weinstock, P.C.*, 357 F. App'x 472, 479 (3d Cir. 2009) (holding that arguments raised for the first time at oral argument in the District Court were waived, because concluding otherwise would "deprive one's opponent of any meaningful opportunity to respond").  So for this reason alone, the Court rejects Plaintiff's argument in this regard.

But even beyond that, Plaintiff never explained why the argument it was making here[20] provided a meaningful distinction from what was at issue in *Simon*.  *Simon*'s point is that a litigant does not have a cognizable property interest in abandoned property.  So whether the takings claim at issue is focused on the taking of that abandoned property itself or the taking of

---

[19]     Unfortunately, Plaintiff's counsel's presentation at the hearing was riddled with examples of arguments not made in the briefing.  At another point, for example, counsel raised an "argument that did not occur to me until . . . last night" as he "was preparing for the hearing today[,]" which had to do with a purported difference between the text of Article I, Section 8 of the Delaware Constitution and the Fifth Amendment.  (Tr. at 115-16)  That argument, too, has been waived.

[20]     As the Court noted earlier, *see supra* n. 8, at various points in Plaintiff's Complaint, Plaintiff *does* appear to suggest that the taking at issue is the taking of interest (among other benefits) due on the Unclaimed Property.  (D.I. 1 at 14 (Plaintiff, in his request for relief, asking for a declaration that "Defendants' *confiscation of interest*, dividends, accruals, earnings, investment returns, and other benefits earned on and from unclaimed or abandoned property under the [DUPL] . . . *are takings of property* within the meaning of the Fifth and Fourteenth Amendments . . . and Article I, § 8 of the Delaware Constitution for which the State is required to pay just compensation") (emphasis added))  Certainly, the taking of interest is what Defendants thought this case was about after reading the briefing.  (Tr. at 117)  In any event, for reasons stated above, the distinction Plaintiff's counsel drew during the hearing on the Motion is immaterial for purposes of resolving this matter.

interest owed on that abandoned property, either way there can be no viable takings claim.  That is because the property (and any interest or other just compensation that might have been owed thereon) has been *abandoned*.  (D.I. 26 at 1, 6; Tr. at 81-82, 119)

For the reasons discussed above, Plaintiff's Complaint is also dismissed in the alternative for failure to state a claim.

## III.   CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court GRANTS Defendants' Motion.  Plaintiff did not seek to amend its Complaint in lieu of dismissal, and the Court has not been provided with an example as to how amendment would be anything other than a futile exercise.  So, the Court further rules that the Complaint be dismissed WITH PREJUDICE.

An appropriate Order will issue.